# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 1:21CR 00621 |
| | ) | Honorable Christopher R. Cooper |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| JULIA SIZER | ) | |

## SENTENCING MEMORANDUM

AND NOW, comes Defendant, Julia Sizer, by and through her attorney, Robert E. Mielnicki, Esquire, and respectfully submits the following:

## BACKGROUND INFORMATION

Defendant, Julia Sizer, is thirty-nine years (39) years old. She is the daughter, and youngest child, of Paul Czar (sixty-seven years (67) old) and Sharon Czar (fifty-one years (51) old). Defendant's parents are happily married, and raised Defendant in Beaver, Pennsylvania, which is a short distance north of Pittsburgh, Pennsylvania. Defendant, with her four (4) siblings, were raised on a farm where cattle was raised, and crops were cultivated. Defendant's father is semi-retired as a trucker. Defendant's mother was a homemaker. The value of hard work and faith were emphasized to Defendant as part of her upbringing in a stable and loving home.

Defendant has four (4) siblings. David Czar is forty-eight (48) years old and employed with Columbia Gas. Laura Turner is forty-six (46) years old and employed as veterinarian technician. Michael Czar is forty-three (43) years old and works for the water authority. Rachel Lewis is forty (40) years old and works a lineman for the local phone company. Defendant has a close relationship with her family.

Defendant is married to Brian Sizer, a marriage that was formed on December 17, 2006.

Brian is a mechanic for Elwood Quality Steel. Defendant has three (3) children with Brian. Shawn Sizer is fifteen (15) years old; Riley Sizer is thirteen (13) years old, and Aiden Sizer is seven (7) years old. Brian Sizer has a daughter, Mandy, who is twenty-one (21) years old. Defendant played a part in raising Mandy.

Defendant is very active in her community, taking part in fundraisers for local causes, such as the Glimmer of Hope Foundation.

Defendant has no criminal record.

Defendant appears to be in good health. She, like many others, contracted Covid in December of 2020. Defendant does not believe that she has any long-term consequences from such. She is vaccinated and will get a booster shot.

Defendant has no history of drug or alcohol abuse, and rarely consumes alcohol. Defendant has never experimented with illegal drugs.

Defendant graduated from Riverside High School in Beaver County, Pennsylvania, in 2001. She finished with a 1.9 grade point average. She then enrolled at the Art Institute of Pittsburgh, but left in 2004, after her roommates decided to move out and she could not afford the rent for the apartment she was residing in close to the Art Institute. Apparently, a judgment was entered against Defendant for unpaid rent, from her time living at this apartment. Defendant only learned of this judgment while being interviewed for the purpose of the PSIR. Counsel is primarily a criminal defense lawyer, having started his career in 1991 as a public defender. Counsel has handled some civil matters, and over a thirty (30) year career, has been involved in a few landlord-tenant matters. Defendant only now learning of this judgement is believable.

Defendant has a steady work history. From July of 2004, Defendant worked as a cake decorator for Giant Eagle in Ellwood City. By way of background, Giant Eagle is the largest chain of grocery stores in Western Pennsylvania, and probably was such in 2004. Defendant earned minimum wage at Giant Eagle, a job that she left to take a position with Marburger's Dairy in Evans City,

Pennsylvania in July of 2005. Defendant worked at Marburger's Dairy until June of 2006, where she earned $8.50 an hour. In July of 2006, Defendant worked at home, which she did until January of 2013. In January of 2013, Defendant took a position as a nail technician for Roxie's Hair Salon where she earned $20 an hour. In October of 2014, Defendant opened her own business, Polished, where she works a nail technician. This business, located in New Castle, Pennsylvania, employs six (6) people. Defendant earns close to $50,000 a year through her business.

## DEFENDANT'S CRIMINAL RECORD

There are no sentencing guidelines for Parading, Demonstrating, or Picketing in a Capitol Building (40 U.S.C. § 5104 (2)(G)). Defendant has no criminal record so the fact that she would be criminal history category I might be irrelevant. The fact that Defendant has no criminal record is, however, relevant to the imposition of sentence. A defendant's criminal record, or lack thereof, should be relevant to the imposition of any sentence. As will be explained, this is particularly true, where the maximum sentence, if imprisonment is imposed, is six (6) months. Defendant submits that a defendant with a criminal record should be treated more harshly than a defendant who has no criminal record. A defendant with an extensive criminal record should be treated more harshly than a defendant with a minimal criminal record.

Aware that there is no offense level for the crime to which Defendant pleaded guilty, and thus no guideline range, a defendant who pleads guilty, or was found guilty, to the same crime that Defendant pleaded guilty to, who would be criminal history category VI, could only be sentenced to six (6) months more prison time than Defendant, who has no criminal record, if Defendant is not sentenced to imprisonment. If a one (1) month prison sentence is imposed on Defendant, then a person who has committed enough crimes to be Criminal History Category VI, could only receive a mere five (5) months more of prison time than Defendant. A defendant who entered The Capitol, and stayed in such much longer than Defendant, with a criminal record, deserves much more prison time than Defendant.

Defendant does not believe that allowing her to plead guilty to Parading, Demonstrating, or Picketing in a Capitol Building (40 U.S.C. § 5104 (2)(G)) was a "plea agreement" in the classic sense. Counsel believes that violating 40 U.S.C. § 5104 (2)(G is what Defendant did. In other words, Counsel, who has practiced criminal law for thirty (30) years, including four (4) years as a public defender, has entered thousands of plea agreements where the willingness of his client to plead guilty resulted in a plea to an offense significantly less serious than what that client did. Counsel cannot possibly remember how many times, in the Commonwealth of Pennsylvania, he has negotiated a plea for a client charged with possession of marijuana, to a summary disorderly conduct.

Congress chose to make Parading, Demonstrating, or Picketing in a Capitol Building (40 U.S.C. § 5104 (2)(G)) a misdemeanor with a six (6) month maximum. That is the seriousness of the offense, as determined by Congress. The factors that this Honorable Court must consider in imposing sentence must be considered with consideration to the fact that those individuals who did more than simply demonstrate or, frankly, just walk around the Capitol for a short time, but were offered a plea to Parading, Demonstrating, or Picketing in a Capitol Building (40 U.S.C. § 5104 (2)(G)), who might have an extensive criminal record, may deserve a prison sentence, possibly six (6) months. But those with no criminal records, who caused no property damage, who got out of the building quickly, deserve significantly less. Defendant submits that the factors this Honorable Court must consider under 18 U.S.C. § 3553 must be considered with consideration pf the fact that those who have criminal records, those who are not remorseful, those who have taken to social media and acted in ways that suggest they still believe what they did on January 6, 2021 was proper, can only receive a maximum of six (6) months of imprisonment. Defendant respectfully submits that the § 3553 factors lean heavily in favor of Defendant receiving a sentence of probation.

**18 U.S. CODE § 3553**

**1.**    **THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND HISTORY AND CHARACTERISTICS OF THE DEFENDANT**:

Defendant agrees with the description of the charges and the acts committed by Defendant, which properly support such. Defendant accepts full responsibility for her actions. Defendant initially denied that she was in the Capitol Building on January 6, 2021. That denial occurred during a telephone call from the FBI, which can be a startling experience. Defendant almost immediately contacted Counsel though and Counsel immediately contacted the FBI and informed them that Defendant would come to them and speak with them. The FBI did not contact Counsel right away. In fact, there was a somewhat significant time gap. Eventually, AUSA Soo Song, who was once the United States Attorney for the Western District of Pennsylvania, who Counsel knew from a prior case, contacted Counsel and Defendant immediately sat down for a full interview with the FBI, during which she admitted that she was in The Capitol on January 6, 2021. Such action by Defendant did not require much effort by Counsel.

Defendant travelled to Washington, D.C. on January 6, 2021, believing that she would be attending what was to be a rally for President Donald Trump. It is acknowledged that this rally was to support a claim that the election of President Joseph Biden was somehow illegitimate. As wild as that claim seemed to Counsel, then and now, such claim was being made by President Donald Trump, former United States Attorney for the Southern District of New York, and former Mayor of New York City, Rudy Giuliani. This claim seemed supported by various United States senators and congresspeople. There was no shortage of reputable, or once reputable, men and women, who supported this claim.

In short, claims of election fraud, have been made over the years, by various people. Never before though has the claim go to the lengths as President Trump and those around him took it though. Cases were filed in various courts by Giuliani and others. Counsel knew these cases to be

frivolous. The general public did not share the legal knowledge of Counsel.

Defendant only mentions this as she fears that it might be held against her that she even travelled to Washington, D.C. to support these claims. Defendant knows, however, that if she had stayed outside The Capitol on January 6, 2021, she would not be appearing before this Honorable Court for sentencing. Defendant entered The Capitol though a door she did not damage or break down, looked around for two (2) minutes at the unfolding mayhem, and left. Those are two (2) minutes that Defendant wishes she had back.

Defendant acknowledges her unlawful act. Defendant accepts responsibility for her actions and while she caused no damage, she understands that part of the huge problem on January 6, 2021 was the sheer number of people in the building. Defendant quickly left the building. Defendant would never have damaged property or engaged in any act of violence towards a law enforcement official. Unlike at least one other woman who entered The Capitol on January 6, 2021, Jenna Ryan, Defendant is remorseful. In fact, Defendant believes that no politician dramatically changes the thing she holds dear the most – her family and their well-being. Defendant truly wishes she had those two (2) minutes back.

Defendant is a mother, who owns her own business. Defendant employs people. Defendant has no criminal record. Defendant is embarrassed by her minor involvement in the events of January 6, 2021.

## 2.    THE NEED FOR THE SENTENCE IMPOSED:

The sentencing option before this Honorable Court would appear to be a term of imprisonment no greater than six (6) months or a period of probation no greater than five (5) years, or home detention. If imprisonment is imposed, no period of supervised release can follow. A special assessment of $10 must be imposed on Defendant and she can be fined up to $5,000. This is the rare case, for Counsel, who is a CJA attorney, where his client can pay a fine and that fine can be punishing.

Defendant is aware of the issue as to how much supervision can be imposed if a prison sentence is imposed. Defendant is also aware of the issue regarding whether probation, particularly that beyond six (6) months can be imposed. if house arrest or home detention is imposed. Defendant believes that probation with a condition of home detention is a lawful sentence not controlled by a six (6) month maximum.

Defendant is employed at her own business. She makes decent money, and no vocational training is necessary for her. There would be little rehabilitation that Defendant could receive where the maximum sentence is six (6) months. It is clear, that if a prison sentence is imposed, it is about deterrence and punishment. Defendant is remorseful, she is embarrassed. Defendant is unlikely to ever commit a crime again. She takes full responsibility for her actions, as she will explain to this Honorable Court. This is Counsel saying this, not Defendant, but if a wild conspiracy theorist like Donald Trump was never elected, Defendant would have lived the remainder of her life without ever appearing before a judge. The power of Trump's outrageous words is reflected by how many people went to Washington, D.C, on January 6, 2021, and how many entered The Capitol.

Donald Trump lives in Mar A Lago, while many he instigated, are in jail.

Given Defendant's limited time in The Capitol, her full and complete admission to her wrongdoing, her lack of a criminal record, the remorse she will show to this Honorable Court, the fact that she is a mother, and employs people, a sentence of six (6) months of probation and a $5,000 fine would be reasonable. Such a sentence would be "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) (of 18 U.S.C. § 3553)."

The only justification for a prison sentence would be that others, who did Defendant did not know, caused extensive damage, and engaged in violence, upon entering The Capitol. Defendant recognizes that entering The Capitol, while a certification of Joseph Biden as President of the United States was taking place, might be more extreme than other actions that would be covered by 40 U.S.C. § 5104 (2)(G) would be, but all the 3553 factors must be considered.

## SERIOUSNESS OF OFFENSE, PROMOTION OF RESPECT FOR THE LAW, AND JUST PUNISHMENT

The overall activity of those who entered The Capitol on January 6, 2021 was despicable. We are a nation founded on protest but, by 2021, there is a way to go about such. Moreover, as those who ascended on The Capitol were doing such, President Trump had lawyers, albeit ones making claims that were outrageous, filing lawsuits to address any irregularities in the vote that was overwhelmingly in favor of President Joseph Biden. Counsel cannot think of any historical act of protest that resulted in anything near the behavior of some who entered The Capitol, which was premised on claims as dubious as those made by President Trump. January 6, 2021 cannot happen again.

Defendant's behavior, however, was minimal in nature, Counsel is reluctant to call such *de minimis* and Defendant would never do such. The fact of the matter is, however, that Defendant's behavior on January 6, 2021 was limited to an entry into The Capitol, not much movement around such, that lasted about two (2) minutes.

Defendant has respect for the law. She abhors the fact that law enforcement was hurt. She is embarrassed by the fact that she is forever linked to what happened on January 6, 2021. Just punishment for Defendant, and a reasonable sentence, is probation and a $5,000.00 fine.

## DETERRRENCE

Defendant is deterred from engaging in anything like what she did on January 6, 2021. The issue is then what sentence must be imposed to deter others. It is highly unlikely that anyone who would ever engage in any behavior like Defendant, and might still consider doing such, would be deterred from doing such if Defendant is imprisoned for a brief time.

## PROTECTION OF PUBLIC

Defendant was lead down a path, a path that led to her behavior on January 6, 2021, by not just conspiracy theorists, but conspiracy theorists who were and still are, prominent people.

Defendant has not only realized how wrong her actions were, but she realizes her activity was motivated by dubious claims, and no politician is important enough to her to ever do anything like she did, on January 6, 2021, ever again. We will now have conspiracy theorists, with voices on social media, and some who have been elected to office, with us forever. Allegations of fraud in our elections will occur again. It is highly unlikely that these claims of conspiracy theories will come from our leader ever again.

If Defendant receives probation, that alone will sufficiently deter others against what she did on January 6, 2021.

## EDUCATION, TRAINING, MEDICAL TREATMENT

Defendant does not need these.

**3-4.   KINDS OF SENTENCES AVAILABLE/SENTENCING RANGE:** The maximum term of imprisonment for is six (6) months. If probation is imposed, the maximum term that can be imposed is five (5) years. A special assessment of $10.00 must be imposed and the maximum fine is $5,000.00. If a sentence of imprisonment is imposed, no period of supervised release can be imposed. Defendant believes that a period of home detention could be imposed as a condition of probation, and not limited to six (6) total months of whether home detention or probation.

**5.   ANY PERTINENT POLICY STATEMENT:**

Defendant is unaware of any pertinent policy statement applicable to imposition of sentence.

**6.   NEED TO AVOID UNWANTED SENTENCE DISPARITIES:**

There are no co-defendants, in the classic sense. There are many who have been indicted for entering The Capitol, whose cases have been resolved.

Jennifer Ryan appeared before this Honorable Court. She showed no remorse for entering The Capitol. It is unknown how long she was in such. What is known is that "Jenna" Ryan seemed to take great pride, not only in what she did on January 6, 2021, but in the damage done by others.

"Jenna" Ryan was one of the least remorseful defendants in criminal justice history. "Jenna" Ryan's social media posts mocked our system and supported her belief in "white privilege," a privilege she probably spends a lot of time denying even exists. Ryan posted on Twitter: "We just stormed the Capital. It was one of the best days of my life." January 6, 2021 was the worst day of Defendant's life.

Jennifer Ryan received a sentence of sixty (60) days imprisonment. Defendant deserves sixty (60) days less. Defendant begs this Honorable Court to agree.

According to Politico, as of January 1, 2022, sixty-four of seventy-one (71) people have pleaded guilty in connection with the January 6, 2021 entry into The Capitol, and seventy-one (71) of those charged have been sentenced. Sixty-four (64) pleaded to misdemeanors. Thirty (30) of the seventy-one (71) people, who have been sentenced, have received a prison sentence. Of those who have received prison sentences, the median sentence was forty-five (45) days. (https://www.politico.com/news/2022/01/04/jan-6-insurrection-sentencing-tracker-526091). Defendant does not know the criminal records of these defendants. Defendant cannot imagine many of them were in The Capitol for a period of time less than she was in such.

### 7.    RESTITUTION

Defendant has agreed to pay her share of restitution.

s/Robert E. Mielnicki
Robert E. Mielnicki, Esquire
Attorney for Defendant